Staples, J.
The books abound with discussions and decisions upon the subject of domicile, habitancy, and residence.
In Thorndike v. City of Boston, 1 Metc. R. 242, Shaw, C. J., said, “that the questions of residence, inhabitancy, or domicile, for although not in all respects precisely the same, they are nearly so, and depend much upon the same evidence, are attended with more difficulty than almost any other which are presented for adjudication.”
There is, however, a wide distinction between domicile and residence, recognized by the most approved authorities everywhere. Domicile is defined to he a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. To constitute a domicile, two things must concur—first, residence; secondly, the intention to remain there. Pilson, trustee, v. Bushong, 29 Gratt. 229; *720 Mitchell v. United States, 21 Wall. U. S., R. 350. Domicile, therefore, means more than residence. A man may be a resident of a particular locality without having his domicile there. He can have but one domicile at one and the same time, at least for the same purpose, although he may have several residences. According to the most approved writer’s and lexicographers, residence is defined to be the place of abode, a dwelling, a habitation, the act of abiding or dwelling in a place for some continuance of time. To reside in a place is to abide, to sojourn, to dwell there permanently or for a length of time. It is to have a permanent abode for the time being, as contradistinguished from a mere temporary locality of existence. In the matter of Wrigby, 8 Wend. R. 134, 140; 1 Amer. Lead. Cases, 899, 953.
notwithstanding these definitions it is extremely difficult to say what is meant by the word residence as used in particular statutes, or to lay down any jtarticular rules on the subject- All the authorities agree that each case must be decided on its own particular circumstances, and that general definitions are calculated to perplex and mislead.
It is apparent that the word residence, like that of domicile, is often used to express different meanings, according to the subject matter. In statutes relating to taxation, settlements, right of suffrage, and qualification for office, it may have a very different construction from that which belongs to it in the statutes relating to attachments. In the latter actual residence is contemplated, as distinguished from legal residence. The word is to be construed in its popular sense, according to the definition already given, as the act of abiding or dwelling in a place for some continuance of time. Crawford v. Wilson, 4 Barb. R. 504, 523; Isham v. Gibbons, 1 Bradf. R. 69, 84; Drake on Attachment, §§ 61-2.
While on the one hand the casual or temporary sojourn *721 of a person in this state, whether on business or .pleasure, does not make him a resident of this state within the meaning of the attachment laws, especially if his sonal domicile be elsewhere, so on the other hand it is not essential he should come into this state with the intention to remain here permanently to constitute him a resident. In the matter of Fitzgerald, 2 Caine’s R. 318; Jackson v. Peery, 13 Mon. R. 231; Rayness v. Tayloe, 10 Louis. R. 726.
Whatever doubt or ambiguity there may have been in former laws on the subject, it is clear that since the revisal of 1849, a party cannot be proceeded against under the foreign attachment law unless he be actually a nonresident of the state at the time. Kelso v. Blackburn, 3 Leigh, 299; Daniel on Attachments, p. 242. The question is not as to the place of his domicile, but his place of abode—his dwelling place. This branch of the attachment law is based upon “the idea that a debtor is living-—dwelling—-beyond the limits of the state, but has effects or debts due him within the state. As he cannot he served with process, there is no mode of reaching his property according to the course of the common law; or if coming into the state temporarily on business or pleasure, he should be served with process, he may, at any time, depart, taking with him his effects, before execution can be had against him. When, however, the debtor is within the state amenable to process and doing business here, the proceeding against him by foreign attachment ought to be carefully watched by the courts, because the proceeding is not merely ruinous to the debtor, hut tends to give one creditor undue preference over the others. This is no hardship upon the creditor, because, if after suit is brought and process served, or before suit is brought, the debtor attempts to remove his effects, the most ample remedy is' afforded the creditor by the second *722 and third sections of chapter 151, Code of 1860, which authorizes attachments where the debtor intends to remove or is removing his effects out of the state. The provisions of these two sections relieve us of the necessity of giving any strained construction to the first section of the same chapter,.where tire proceeding is against one within the state, and amenable to process here.
Applying these principles to the case in hand, I think the circuit court did not err in holding that the defendant, Byan, was, at the time of suing out the attachment, a resident of the state of Virginia, and that the attachment against hhn was sued out on false suggestion. The defendant having demurred to the plaintiff’s evidence, upon familiar principles, must he held to have waived all evidence on his part which conflicts with that of the plaintiff’ and to admit all inferences of fact that may be fairly deduced from that of his adversary. Trout v. Va. Tenn. R. R. Co., 23 Gratt. 619; Barton’s Law Prac. 222. Looking then to the testimony of the plaintiff!, and such of the defendant’s as is not in conflict with it, it appears that Byan had his domicile and residence in Washington city from 1855 to 1868. In December, 1868, he obtained a contract from the Winchester and Strasburg railroad company to construct three sections of their road in this state, the work to be completed by the first of September, 1869. The defendant, however, agreed to do any additional work in the way of masonry, bridges, culverts and the like, the company might require, within such extended time as the chief engineer might allow. The defendant commenced his work the first’of January, 1869, and proceeded with it until arrested by the attachments against him. In April he brought his family to Newtown, Virginia, consisting of his wife, two daughters and two sons. Another daughter was left in Washington, being an employee in the treasury department. .Shortly after the removal of the family to Virginia, the *723 house in Washington, belonging to the wife, was rented out. The two sons worked with the father on the railroad, and the two daughters assisted the mother in keeping a boarding house in Newtown. In the month of ■June, while the defendant w*as thus engaged, these attachments were sued out and levied upon his effects, and his work arrested and never resumed.
It was proved that during the time the defendant was engaged in his work, he always claimed Washington city as his place of residence, and declared he intended to return to that place so soon as his contract was completed, unless he could get work elsewhere, and that he expected to get a contract on a Pennsylvania or a Maryland road. These are substantially the facts about which there is no controversy.
In the first place, I cannot think that the declarations of the defendant, so much relied on, are entitled to much consideration. Such declarations are not of much weight, unless they accompany and are explanatory of acts done at the time. They are often loosely and carelessly made, and as often misunderstood or misconstrued by the hearer. It is very probable the defendant did consider Washington city as his domicile, as his wife’s property was there; for he might have a domicile in Washington and still be a resident of Virginia.
As already stated, the house in Washington had been rented, the family brought to Virginia with all the means of the defendant. It was impossible to say how long he would remain in Virginia, for although he was under obligation to complete his work by the 1st of September, 1879, it was by no means certain he would do so, and at all events he had undertaken to do other work, if required by the company, which woul d extend his contract indefinitely. It seems that the excavation on section eight, part of defendant’s work, was not completed until April, 1870. So that the stay of the defendant in *724 the state was wholly uncertain and indefinite. His family were here; his business and means were here; his dwelling was here, and I think it is impossible to resist the conclusion that his residence, for the time being, was here.
From the earliest period the proceeding by attachment has been carefully watched by the courts. Barnett v. Darnielle, 3 Call, 416. In Mantz v. Henley, 2 Hen. & Munf. 308, Judge Fleming said, that the attachment law, though sound in principle and salutary in operation when properly administered, had been, in the course of his experience and observation, oftener perverted and more abused than any law in our whole statutory Code; that instead of promoting justice it was often made the engine of injustice and oppression, and that being a summary proceeding unknown to the common law, the strict letter of the statute ought to be adhered to in all cases. The same view was taken by Judge Carr in Jones Ford v. Anderson, 7 Leigh, 308. In Claflin & Co. v. Steinbock & Co., 18 Gratt. 842, Judge Joynes said: “This extraordinary remedy is not only harsh towards the defendant himself, but its operation is harsh towards the other creditors of the defendant, over whom the attachment creditors obtain priority. It is susceptible of great abuse,, and has often been greatly abused. It is therefore closely watched, and will never be sustained unless all the requirements of the law have been complied with.” Daniel on Attachments, 24-5. The wisdom of these remarks is, I think, shown in the present case. Whether the defendant would in any event have completed his contract is a mere matter of conjecture. One thing is certain: his work was suspended and his business destroyed by the levy of these attachments. There was no difficulty at any time in serving him with process, and as little difficulty in obtaining judgment and execution while he was in the state. If he had attempted to remove his effects *725 the remedy of the plaintiff was ample under the second and third sections already adverted to. For these reasons I think the judgment of the circuit court should .affirmed.
The other judges concurred in the opinion of Staples, J.
Decree affirmed.